UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                       )
W. JEAN SIMPSON,                       )
                                       )
      Plaintiff,                       )
                                       )
      v.                               )   Civil Action No. 03-1123 (PLF)
                                       )
MIKE LEAVITT, Secretary, U.S. Dep't of )
      Health and Human Services,       )
                                       )
      Defendant.                       )
_____)
```

OPINION

This case is before the Court on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. After considering the record and all the papers filed by the parties, the Court grants the motion in part and denies it in part.

I.  BACKGROUND

Plaintiff Jean Simpson is an African-American woman born on May 15, 1943. She has been employed as a GS-13 Education Program Specialist in the Education Services Branch of the Program Support Division of the Head Start Bureau since March 1993. See Plaintiff's Exhibit ("PX") 2 (resume of Jean Simpson). The Head Start Bureau, which is part of the Department of Health and Human Services, is divided into three divisions – Program Support, Program Operations, and Program Management – which are each divided into subsidiary branches. See PX 10 (Head Start Bureau organization chart). The Education Services Branch is one of three branches operating within the Program Support Division. See id.

In 1997, Ms. Simpson applied for a GS-14 level position and was selected for the best qualified list, but was not selected for the position. See Plaintiff's Opposition Brief ("Opp.") at 5. In 1999, Ms. Simpson applied for two different GS-14 level positions; she was selected for the best qualified list for both positions, but ultimately was not selected for either position. See id. at 6. In 2000, Ms. Simpson sought and was denied a promotion to GS-14 through a desk audit. See id.

In the fall of 2001, the Department of Health and Human Services issued Job Opportunity Announcement ACF-01-212 for a GS-14 position as Program Analyst Officer in the Program Management Division, Program Management Operations Branch. See Defendant's Motion for Summary Judgment ("Mot. Summ. J.") at 2; Opp. at 7; PX 11 (job opportunity announcement). In October 2001, Ms. Simpson applied for this position and was selected for the best qualified list by Dr. Carmen Bovell-Chester, the recommending official. See Mot. Summ. J. at 3; PX 16 (ACF merit promotion selection certificate) (containing best qualified list). The selecting official was Douglas Klafehn, Deputy Associate Commissioner of the Head Start Bureau. See Mot. Summ. J. at 3; Opp. at 8. Mr. Klafehn did not hold interviews prior to making his selection. In February 2002, Ms. Simpson was notified by email that she had not been selected and that Amanda Bryans, a white female born on November 7, 1965, had been awarded the position. See Mot. Summ. J. at 4; Opp. at 7-8.

Ms. Simpson filed an informal Equal Employment Opportunity complaint shortly after hearing that she had not been selected for the GS-14 Program Analyst position and filed an official complaint on May 15, 2002. See Mot. Summ. J. at 6. On June 19, 2002, the Department of Health and Human Services acknowledged Ms. Simpson's formal administrative complaint,

see Mot. Summ. J. at 6, and on May 23, 2003, Ms. Simpson filed a complaint in this Court asserting employment discrimination. See Complaint at 1. Ms. Simpson alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2002e-2, *et seq*., and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. See Complaint at 1.

## II. DISCUSSION

### *A. Standard for Summary Judgment*

Summary judgment may be granted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895. When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Washington Post Co. v. United States Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).

*B. Race Discrimination*

Simpson asserts race discrimination in her 2001 non-selection for the GS-14 position of Program Analyst Officer in the Program Management Division, Program Management Operations Branch.  See Complaint at 4.  Title VII prohibits federal agencies from discriminating in employment decisions on the basis of race.  See 42 U.S.C. § 2000e-16.  In Title VII cases where the plaintiff offers no direct evidence of race discrimination, the Court employs the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  See Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003).  Because the plaintiff does not allege any direct evidence of race discrimination, the McDonnell Douglas framework will apply.

Under McDonnell Douglas, a plaintiff pursuing a discrimination claim based on her non-selection for a position first must establish a *prima facie* case of discrimination.  The plaintiff must show that (1) she is a member of a protected class; (2) she applied for and was qualified for an available position; (3) despite her qualifications, she was rejected; and (4) the position was filled by someone not of her protected class or the position remained vacant and the employer continued to seek applicants.  See Lathram v. Snow, 336 F.3d at 1088; Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000).  The defendant concedes that plaintiff has established her *prima facie* case.  See Mot. Summ. J. at 12.  Ms. Simpson is African-American, and therefore a member of a protected class; she applied for the position of Head Start Coordinator and, since she was selected for the best qualified list, defendant must concede that she was qualified, see PX 16 (best qualified list); despite her qualifications, she was rejected; and

the position was filled by Amanda Bryans, who is not a member of the protected class. See PX 29 (notification of personnel action). Plaintiff has satisfied her initial burden of demonstrating that it was "neither an absolute or relative lack of qualifications nor the absence of a vacancy in the job sought" that prevented her selection. See Holcomb v. Powell, 433 F.3d at 896 (citing Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 n.44 (1977)).

Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to show that there was a legitimate, non-discriminatory reason for the non-selection. See Holcomb v. Powell, 433 F.3d at 896. At this stage, the burden on the defendant is one of production, not of persuasion. See id. As a result, the "qualifications-based justification [offered by defendant] constitutes a legitimate, nondiscriminatory reason for the allegedly discriminatory action[.]" Id. Once defendant has met this burden, the presumption that plaintiff's non-selection was discriminatory "simply drops out of the picture." Id. (quoting Burke v. Gould, 286 F.3d 513, 520 (D.C. Cir. 2002)). As a non-discriminatory reason for Ms. Simpson's non-selection, defendant points to the recommending and selecting officials' belief that Ms. Bryans was better qualified for the position. See Mot. Summ. J. at 13; PX 15 at 1-2 (Klafehn affidavit); PX 20 at 2-3 (Bovell-Chester affidavit). Defendant points to the relationship between Bryans' previous position and the work required by the position in question, as well as to her familiarity with the PRISM monitoring system, work with regional offices, knowledge of relevant regulations and financial management, work on transportation regulations, and national and regional training experience. See Mot. Summ. J. at 14; PX 15 at 2 (Klafehn affidavit); PX 22 at 2-3 (Bovell-Chester affidavit).

Because the defendant has provided a non-discriminatory explanation for its actions, the McDonnell Douglas framework now simply "disappears." See Holcomb v. Powell, 433 F.3d at 896 (quoting Morgan v. Fed. Home Loan Mortgage Corp., 328 F.3d 647, 651 (D.C. Cir. 2003)). At this stage, the question of whether the proffered non-discriminatory explanation was pretextual "merges with [Simpson's] ultimate burden of persuading the court that she has been the victim of intentional discrimination," Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981), and the "sole remaining issue is discrimination *vel non*." Morgan v. Fed. Home Loan Mortgage Corp., 328 F.3d at 651; see also Holcomb v. Powell, 433 F.3d at 896. And the question for the Court to decide is whether "a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." Lathnam v. Snow, 336 F.3d at 1088. The plaintiff may attempt to meet this burden with (1) evidence establishing her *prima facie* case; (2) evidence attacking the employer's proffered explanation; and (3) any further evidence that may be available to the plaintiff, "such as independent evidence of discriminatory statements or attitudes on the part of the employer." Holcomb v. Powell, 433 F.3d at 897; see also Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc).

Ms. Simpson first challenges defendant's proffered non-discriminatory explanation as pretextual by claiming that she is "three times" as qualified as Bryans, the applicant eventually selected. See Opp. at 27. Indeed, Ms. Simpson does appear to be highly qualified: she has repeatedly received excellent and outstanding performance reviews; she holds a Ph.D and a Master's degree; she has served as program project officer for two national initiatives; and she managed the youth services program for the U.S. Army in 22 cities, among

other professional accomplishments.  See PX 2 (resume of Jean Simpson).  Ms. Bryans also is highly qualified: she holds a Master's degree, and has served as a program analyst with Head Start in the Program Operations Branch and as a Head Start Fellow and Director, among other relevant professional experiences.  See PX 18 (resume of Amanda Bryans).

When considering a plaintiff's challenge to an employer's non-discriminatory explanation for non-selection, the courts have "consistently declined to serve as a 'super-personnel department that reexamines an entity's business decisions.'"  Holcomb v. Powell, 433 F.3d at 897 (citing Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999)).  While there may be differences in qualifications between Ms. Simpson and Ms. Bryans, there is nothing that approaches the "wide and inexplicable" gulf between their qualifications that is required to rebut the defendant's non-discriminatory explanation.  See Lathram v. Snow, 336 F.3d at 1091; compare Aka v. Wash. Hosp. Ctr., 156 F.3d at 1299 (holding plaintiff with nineteen years experience as hospital assistant and Bachelor's and Master's degrees to be significantly better qualified for pharmacy technician position than applicant with no college education and two months' relevant experience).  When the differences between candidates are minor, as they are here, "a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call."  Holcomb v. Powell, 433 F.3d at 897 (quoting Aka v. Wash. Hosp. Ctr., 156 F.3d at 1295).  Even if there was a qualifications gap between Ms. Simpson and Ms. Bryans, it was not "great enough to be inherently indicative of discrimination."  Id.  The evidence proffered fails to establish that Mr. Simpson's qualifications were "sufficiently superior to those of [Ms. Bryans] to allow a jury to infer discrimination."  Id.

But Ms. Simpson is not required to establish such a disparity in order to survive summary judgment; there are other grounds on which she may attempt to attack her non-selection. Thus, Ms. Simpson also seeks to undermine the proffered non-discriminatory explanation offered by defendant by alleging that the selecting and hiring officials misstated her qualifications in their depositions and affidavits. See Aka v. Wash. Hosp. Ctr., 156 F.3d at 1295 ("a plaintiff can attempt to show that the employer's explanation misstates the candidates' qualifications"); see also Holcomb v. Powell, 433 F.3d at 897-98 (same). First, Ms. Simpson alleges that Klafehn and Bovell-Chester described her as lacking the necessary "scope of experience" and having a background that related only in a "narrow way" to the position, and that this amounts to a misstatement. See Opp. at 31. Although Ms. Simpson does not point to any particular statements, see id., presumably she is referring to Klafehn's statement that Ms. Simpson's "experience relates somewhat to one aspect of what the Program Management Branch does, but only in a narrow way," PX 15 at 3 (Klafehn affidavit), and Bovell-Chester's statement that Ms. Simpson's "resume did not present her as having the scope of experience that we were looking for in the branch chief." PX 20 at 3 (Bovell-Chester affidavit). Ms. Simpson alleges that a jury could find it "simply incredulous" that her "scope of experience" was too "narrow," and the claim therefore amounts to a misstatement. See Opp. at 32. The Court disagrees. The selecting and hiring officials' comments regarding plaintiff's scope of experience "neither contradict nor are inconsistent" with the length of plaintiff's career in education. See Holcomb v. Powell, 433 F.3d at 898. It is not a misstatement to acknowledge Ms. Simpson's long career in education and still conclude that she is less qualified for a particular position than another candidate.

Ms. Simpson next points to Klafehn's claim that "despite the fact that [Simpson] was not working in the Program Management Branch . . . if she had the inclination and interest to get involved in [the kind of management and policy issues dealt with in the Program Management Branch], she had ample opportunity and could have done so," implying that she had not done so. See PX 15 at 6 (Klafehn affidavit). Ms. Simpson points to the policy-related aspects of her experience in the Army, to her voluntary participation in monitoring reviews of local Head Start programs, and to her previous applications to the Head Start fellows program in the Program Management Branch as evidence that she was interested and had attempted to get involved in policy issues. See Opp. at 31-34; PX 2 (resume of Jean Simpson). The Court concludes, however, that this alleged inconsistency is insufficient to support an inference of discrimination. To the extent that Klafehn's statement may not fully acknowledge the scope of Ms. Simpson's professional experience, it does not approach the level of "rather explicit misstatement" referenced in Aka. See Aka v. Wash. Hosp. Ctr., 156 F.3d at 1295 ("Thus, if the employer says that it did not hire the plaintiff because he did not speak Portuguese, the plaintiff can show that he did speak Portuguese, and that the employer knew it.") (emphasis in original). Aka suggests that an employer's statement must be objectively incorrect in order to qualify as a "misstatement." See Aka v. Wash. Hosp. Ctr., 156 F.3d at 1295.

Even if objective falsity is not required, defendant's alleged misstatements here are still insufficient to support an inference of discrimination. In order to second-guess these characterizations and permit a jury to infer discrimination, the Court would need to assume the role of "super-personnel department," a role it must assiduously avoid when plaintiffs allege

9

superior qualifications.  See Holcomb v. Powell, 433 F.3d at 897.[1]  Because Klafehn's statement does not amount to a "rather explicit misstatement" of Simpson's qualifications, it is insufficient to rebut the defendant's proffered non-discriminatory explanation.[2]

At this final stage of the McDonnell Douglas framework, a plaintiff also may offer any additional evidence of discrimination that is available, such as independent evidence of discriminatory statements or attitudes on the part of the employer.  See Holcomb v. Powell, 433 F.3d at 899; Aka v. Wash. Hosp. Ctr., 156 F.3d at 1295 n.11 (plaintiff can also survive summary judgment by presenting other evidence that permits an inference of discrimination).  In some circumstances, this may include data showing that the defendant employs members of the plaintiff's protected class at rates far below their numbers in the applicant pool and the general

---

[1]  This is clearly demonstrated by Ms. Simpson's assertion that her participation in monitoring is evidence of her interest in issues relevant to the Program Management Branch. See Opp. at 13.  Klafehn states that Ms. Simpson's volunteering to conduct monitoring reviews – as many as eight in one year – was "not a positive thing," PX 22 at 26 (Klafehn deposition), and Bovell-Chester suggests it is cause to "wonder what was happening in her own branch that she had the time to go out on eight reviews."  PX 20 at 3 (Bovell-Chester affidavit).  This example illustrates that Ms. Simpson is not in fact providing evidence of misstatements by the selecting and recommending officials, but rather is challenging those individuals' characterization of her resume.  Such characterizations are not misstatements that give rise to an inference of discrimination.  Determining whether participation in eight monitoring reviews per year is a "positive thing," or whether it is evidence of interest in the work of the Program Management Branch is simply outside the Court's purview.

[2]  Ms. Simpson also claims that statements made by Klafehn and Bovell-Chester regarding the scope of the Education Branch's responsibilities and the frequency of interbranch transfers give rise to an inference of discrimination.  See Opp. at 32.  These statements are irrelevant to Simpson's claim.  The scope of the branch's responsibilities may be greater or lesser and transfers may be more or less frequent, but neither would allow the Court to conclude that Simpson was more or less qualified for this position.  In order for Simpson to rebut defendant's proffered explanation as pretextual, plaintiff must show that "her employer substantively misstated her qualifications."  See Holcomb v. Powell, 433 F.3d at 897 (emphasis added).  Based on the evidence presented by Simpson, these comments do not substantively misstate Simpson's qualifications.

population.  See Aka v. Wash. Hosp. Ctr., 156 F.3d at 1295 n.11; Waterhouse v. District of Columbia, 298 F.3d 989, 996 (D.C. Cir. 2002).

  Ms. Simpson makes several allegations regarding the general atmosphere and long-term hiring practices at the Head Start Bureau.  She presents three signed declarations and one unsigned declaration from four African-Americans who are either current or former GS-13s in the Head Start Bureau, all four of whom allege that race was a factor in their non-promotion. See PX  33 (signed declaration of Ladora A. Cobb, former Head Start employee); PX 34 (signed declaration of Tawana Keys-Hough, current Head Start employee); PX 35 (signed declaration of Warren Harris, former Head Start employee); PX 37 (unsigned declaration of Katherine Gray, current Head Start employee).  Ms. Simpson also offers testimony pointing to an alleged discrepancy between the number of African-Americans working in the "elite" Program Management Division and the number working in the less prestigious Program Operations Division.  See PX 33 (signed declaration of Ladora A. Cobb, former Head Start employee); PX 35 (signed declaration of Warren Harris, former Head Start employee).

  This evidence is of limited value for two reasons.  First, Ms. Simpson provides no information that would allow the Court to determine whether the Program Management Division employs African-Americans at rates significantly below their number in the applicant pool or general population.  See Holcomb v. Powell, 433 F.3d at 901 (plaintiff "proffers no statistics or other data describing the demographic composition of ODEO or FDIC as a whole."); see also Aka v. Wash. Hosp. Ctr., 156 F.3d at 1295 n.11 ("For instance, if a female plaintiff claims sex discrimination, evidence that the defendant employs women at rates far below their numbers in the applicant pool and the general population may well help her case.").  Because Ms. Simpson's

11

evidence consists only of the subjective impressions of current or former employees, it provides no basis from which the Court may draw an inference of discrimination.

Second, even if Ms. Simpson had provided the Court with statistics regarding the Program Management Branch's hiring practices, such evidence is of limited value in this context.  Although statistical evidence may be extremely significant in disparate impact or class action disparate treatment cases, and it is "certainly relevant to a showing of pretext in [individual] disparate treatment actions," Krodel v. Young, 748 F.2d 701, 710 (D.C. Cir. 1984), cert. denied, 474 U.S. 817 (1985), such evidence generally is not conclusive and will instead serve to "add[] 'color'" to the inquiry into the employer's decision-making process.  See Conway v. Electro Switch Corp., 825 F.2d 593, 597 (1st Cir. 1987), cited in Townsend v. Wash. Area Transit Auth., 746 F. Supp. 178, 186 (D.D.C. 1990); see also LINDEMANN & GROSSMAN, 1 EMPLOYMENT DISCRIMINATION LAW 34 ("Statistics are admissible, but rarely determinative, in individual disparate treatment cases.").  This evidence alone is insufficient to create an inference of disparate treatment.  Furthermore, because the other evidence Ms. Simpson presents -- her allegedly superior qualifications and the selecting employee's misstatements -- does not aid her claim of race discrimination, there is nothing to which this more generalized evidence may "add color."[3]

---

[3]     Ms. Simpson also argues that the selecting and hiring officials failed to hold interviews and suggests that the selection process consequently was not fairly administered.  See Opp. at 35.  Hiring official Klafehn stated, however, that he knew the applicants well enough to make the decision without interviews.  See PX 15 (Klafehn affidavit); PX 22 (Klafehn deposition).  Whether or not his statement is challenged by plaintiff, the absence of interviews does not support an inference of irregularity because the policies of the Office of Personnel Management and the Department of Health and Human Services do not require them.  See PX 16 (ACF merit promotion selection certificate) ("Although Office of Personnel Management and

Ms. Simpson has failed to carry her burden in the final stage of the <u>McDonnell Douglas</u> framework. For this reason, the defendant is entitled to judgment as a matter of law on Ms. Simpson's Title VII claim. The Court will grant defendant's motion for summary judgment on this claim.

### C. *Age Discrimination*

Plaintiff alleges age discrimination in violation of the ADEA, 29 U.S.C. § 633a, based on statements allegedly made by the selecting official. <u>See</u> Opp. at 24; <u>see</u> <u>also</u> PX 20 (Bovell-Chester affidavit), 22 (Klafehn deposition). Ms. Simpson bases her age discrimination claim on statements from recommending official Dr. Chester-Bovell, who "heard Doug [Klafehn, selecting official,] say that we need to bring in younger people. I have heard it said that we needed to have younger people to be able to pass on this knowledge because the people with historical knowledge will be retiring over the next several years." PX 20 at 4 (Bovell-Chester affidavit). At his deposition, Klafehn did not recall saying this, but testified that "I would have said something like that because I believe that and, as I said, the way that would get carried out would be to try to have jobs for which younger people would possibly apply." PX 22 at 78 (Klafehn deposition). Klafehn conceded that "[t]here's pressure to hire young people and there's a fact that we need to – since a very large percentage of the people are eligible to retire . . . So there are times when there can be choices made about which jobs get filled." <u>Id</u>. at 71-72. Klafehn also noted, "I don't doubt that there may have been times when various people

---

DHHS policies do not require it, you are encouraged to use the interview as an important factor in considering the referred candidates.").

spoke about the agency's need to deal with the fact that we have an aging workforce, many of whom will be retiring soon." Id. at 71.

While this evidence speaks to discriminatory tendencies, in order to be considered direct evidence of discrimination, it must "demonstrat[e] unlawful bias against the plaintiff with respect to the employment decision at issue." LINDEMAN & GROSSMAN, 1 EMPLOYMENT DISCRIMINATION LAW 40 (emphasis added) ("Direct evidence exists, for example, where the plaintiff offers a memorandum written by the company president stating that he did not hire the plaintiff because she is a woman."). Ms. Simpson's allegations are not direct evidence of age discrimination because Klafehn's alleged statements concerned agency hiring practices in general and not this position or Ms. Simpson in particular. Because this evidence does not "directly prove a fact of consequence to the action" but instead may "permit[] the factfinder to infer the existence of such a fact," it does not constitute direct evidence of age discrimination. See id. at 11 (emphasis in original).

In ADEA cases in which there is no direct evidence of age discrimination, the D.C. Circuit applies the Title VII McDonnell Douglas framework. See Forman v. Small, 271 F.3d 285 (D.C. Cir. 2001). Defendant does not dispute that Ms. Simpson has made her *prima facie* case. See Mot. Summ. J. at 12. Ms. Simpson is over 40 and therefore a member of the ADEA's protected class. And the other factors establishing her *prima facie* case in the race discrimination context also establish her *prima facie* case in the age discrimination context. See 29 U.S.C. § 633a(a); see also Part II.B, supra.

At the second step of the McDonnell Douglas framework, defendant offers the same qualifications-based justification as discussed in Part II.B, supra, and as in the race

discrimination context, this justification is sufficient.  Unlike Ms. Simpson's race discrimination claim, however, at the final stage of the McDonnell Douglas analysis her age discrimination claim is supported by evidence sufficient to permit an inference that defendant's proffered explanation is pretextual.  Klafehn's statements were not "direct" in the sense that they applied specifically to Ms. Simpson or to this position specifically because there were directed at hiring decisions more generally.  They may, however, support an inference of age-based discrimination.  See Threadgill v. Spellings, 377 F. Supp. 2d 158, 164-66 (D.D.C. 2005) (holding that repeated remarks about need to bring in "new blood" or "young blood" by one of the decision-makers were not "stray remarks" and may permit inference of discrimination) ; see also Lindahl v. Air France, 930 F.2d 1434, 1439 (9th Cir. 1991) (sexist comments reflecting the supervisor's stereotypical images of men and women raised a genuine issue of fact with respect to pretext); LINDEMANN & GROSSMAN, 1 EMPLOYMENT DISCRIMINATION LAW 28.  A reasonable jury therefore could infer that defendant's justification was pretextual and thus find that Ms. Simpson was the victim of age discrimination.

       Because the hiring employee's statements raise a genuine issue of material fact with regard to the claim of age discrimination, defendant's motion for summary judgment on plaintiff's age discrimination claim is denied.

       An Order consistent with this Opinion will issue the same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: June 23, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| W. JEAN SIMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 03-1123 (PLF) |
| ) | |
| MIKE LEAVITT, Secretary, U.S. Dep't of ) | |
| Health and Human Services, ) | |
| ) | |
| Defendant. ) | |

ORDER AND JUDGMENT

Upon consideration of the arguments of the parties and the entire record herein, and for the reasons given in the Opinion issued this same day, it is hereby

ORDERED that [31] defendant's motion for summary judgment is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that JUDGMENT is entered for defendant on plaintiff's Title VII claim; and it is

FURTHER ORDERED that the parties shall appear for a status conference on July 14, 2006 at 9:30 a.m.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: June 23, 2006